```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          NORTHERN DIVISION

WILLIAM T. STAIGER,                )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    No. 2:06 CV 30 JCH
                                   )                    DDN
MICHAEL J. ASTRUE,[1]              )
Commissioner of Social Security,   )
                                   )
          Defendant.               )
                                   )
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff William T. Staiger for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and 1381 et seq. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b).

**1. Background**

Plaintiff William T. Staiger applied for disability benefits on August 8, 2002. He alleged he became disabled on March 29, 2002, at the age of 30, due to left knee reconstruction surgery, back pain, and back surgery. (Tr. 56, 74, 95, 378.)

Following an evidentiary hearing held on March 9, 2004, an administrative law judge (ALJ) denied benefits on October 13, 2004. (Tr. 16-24.) Because the Appeals Council denied review of the ALJ's decision (Tr. 5-7), it became the final decision of the Commissioner for review in this action.

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as defendant in this suit. 42 U.S.C. § 405(g).

## 2. General Legal Principles

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

Here, the Commissioner determined that plaintiff could not perform his past relevant work, but he maintained the ability to perform some light work. Therefore, the burden shifted to the Commissioner to show that there is work in significant numbers in the national economy that plaintiff can perform. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### 3. Decision of the ALJ

In an October 13, 2004, decision denying benefits, the ALJ found that plaintiff had had two laminectomies and discectomies at the L5-S1 and L4-L5 levels, with degenerative disc disease. However, no impairment or combination of impairments was considered severe. (Tr. 23.)

The ALJ considered the medical evidence, including the records from plaintiff's treating physician Terry L. Thrasher, D.O., and consulting physician Eddie W. Runde, M.D. The ALJ noted that Dr. Thrasher's opinion that plaintiff was unable to work was not entitled to great weight, because Dr. Thrasher was not an orthopedist or a neurological specialist. (Tr. 18-19, 21.)

The ALJ considered plaintiff's subjective complaints and found them not fully credible. He found that plaintiff's complaints were not consistent with the medical evidence and that his daily living activities were restricted by his own choice. Any depression he complained of did not limit his abilities. (Tr. 21-22.)

The ALJ found that plaintiff maintained the residual functional capacity (RFC) to lift 10 pounds frequently and 20 pounds occasionally, could only occasionally climb, stoop, kneel, crouch, or crawl, or should only occasionally have concentrated or excessive exposure to vibrations. The ALJ found that plaintiff maintained the RFC to perform some light work, but that there were still jobs in significant numbers in the national economy that plaintiff could perform. (Tr. 23-24.)

### 4. Plaintiff's ground for relief

Plaintiff's sole ground for relief is that the ALJ erred by not relying on the opinion of plaintiff's treating physician, Dr. Thrasher. (Doc. 17, Brief at 12.)

### 5. Discussion

The RFC is "the most [a claimant] can still do despite" his physical or mental limitations. 20 C.F.R. § 404.1545(a). When determining plaintiff's RFC, the ALJ must consider "all relevant evidence" but ultimately, the determination of the plaintiff's RFC is

a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

> The ALJ found plaintiff's impairments limited his RFC as follows: The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; doing more than occasional climbing, stooping, kneeling, crouching, or crawling, or having concentrated or excessive exposure to vibrations.

(Tr. 23.)

When determining the RFC, "[t]he opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record." Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004). "Such opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." Id. "By contrast, '[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). The ALJ must set forth his reasons for the weight given to a treating physician's assessment. Singh, 222 F.3d at 452.

A brief history of plaintiff's medical conditions is necessary at this point. Plaintiff began experiencing back pain and numbness in his right leg as early as 1998. On May 20, 1998, Randal R. Trecha, M.D., of the Columbia Orthopedic Group, diagnosed plaintiff with degenerative disc disease, lumbar strain, and herniated nucleus pulposus. (Tr. 229-30.) Plaintiff underwent back surgery in 1998. (Tr. 231.) Plaintiff underwent a second back surgery on September 21, 2000. (Tr. 141-47, 275-85.) Both surgeries were performed by Dr. Trecha.

Plaintiff saw Dr. Thrasher many times from 1997 through the time his application for benefits was pending. He began seeing him for back pain and leg numbness as early as 1998. Dr. Thrasher often referred him

-4-

to specialists, and diagnosed plaintiff with lumbar disc disease on many occasions. Dr. Thrasher examined plaintiff concerning his left knee pain, which ultimately was diagnosed as a torn ACL (anterior cruciate ligament) and a medial meniscus tear. (Tr. 170, 190-94, 209, 301-05, 308, 310.) Plaintiff eventually had surgery on his knee in June 2002, which was performed by Chris Main, D.O. (Tr. 297-99.)

On March 9, 2004, Dr. Thrasher wrote a letter indicating plaintiff was in need of another back surgery and that sitting or standing for extended periods of time would cause plaintiff excruciating pain. Dr. Thrasher indicated the back surgeon would determine plaintiff's ability to work after surgery. (Tr. 308, 310.)

Plaintiff visited Robert B. Fisher, D.O., on July 22, 2004. Dr. Fisher noted that plaintiff had tenderness in his back. Dr. Fisher diagnosed plaintiff with lumbar post laminectomy syndrome, and prescribed Zanaflex[2] to help him sleep. (Tr. 366-67.)

On September 15, 2004, it was noted plaintiff's current medications included Zanaflex, Carisoprodol,[3] Motrin (ibuprofen), Amitriptyline,[4]

---

[2]Zanaflex is a medication used to treat muscle tightness and cramping. Webmd.com/drugs. (Last visited June 4, 2007.)

[3]Carisoprodol is a medication used to treat pain resulting from muscle injuries such as sprains, strains, and spasms. Webmd.com/drugs. (Last visited June 4, 2007.)

[4]Amitriptyline is a medication used to treat depression and other mental and mood disorders. Webmd.com/drugs. (Last visited June 4, 2007.)

Neurontin,[5] Tramadol,[6] and Fluoxetine.[7]  He received an epidural steroid injection.[8]  (Tr 395-96.)

Plaintiff argues that the ALJ did not give proper weight to Dr. Thrasher's March 9, 2004, opinion that plaintiff could not sit or stand for extended periods without excruciating pain, and that a back surgeon would be able to determine his ability to work after another surgery. (Tr. 308, 310.)

The ALJ considered Dr. Thrasher's opinions, including the March 9, 2004, letter.  The ALJ noted:

> Dr. Thrasher is not an orthopedist or neurological specialist.  When he did refer the claimant to such specialists, they did not exactly affirm Dr. Thrasher's opinion.  The orthopedist who examined the claimant in November 2002 initially diagnosed a failed back syndrome, but a subsequent x-ray showed no new fracture or disc disease of the lumbosacral spine since the second back surgery in September 2000.  After that, the claimant had very little in the way of treatment for musculoskeletal pain.  He saw Dr. Thrasher for complaints of back and/or neck pain on November 27, 2002, and again on March 3 and August 26, 2003.  During those times, Dr. Thrasher refilled some of his pain medication prescriptions, but did not refer him for additional pain specialist evaluation or treatment.  There was no recurrence of significant back pain until the ice incident in early January 2004, and then there was little in the way of treatment again until July 2004, when an MRI of the lumbosacral spine failed to show anything justifying further back surgery, that evidence seeming to belie Dr. Thrasher's conclusion on March 9.

---

[5]Neurontin is a medication used to treat seizures in adults.  It is also used to treat nerve pain.  Webmd.com/drugs.  (Last visited June 4, 2007.)

[6]Tramadol is used to treat moderate pain.  Webmd.com/drugs.  (Last visited June 4, 2007.)

[7]Fluoxetine is used to treat depression and other mood disorders.  Webmd.com/drugs.  (Last visited June 4, 2007.)

[8]An epidural steroid injection is a combination of a local anesthetic and a strong anti-inflammatory medication that is injected in the spinal canal.  These injections are often used to treat pain and inflammation resulting from lumbar spinal stenosis that has not responded to other treatment.  Webmd.com/back-pain/Epidural-steroid-injections-for-lumbar-spinal-stenosis.  (Last visited June 4, 2007.)

(Tr. 21.)

Upon careful consideration, the undersigned finds that the ALJ did not properly consider the opinion of Dr. Thrasher, plaintiff's treating physician. Besides the fact that Dr. Thrasher is not a specialist, there is no substantial evidence in the record suggesting his opinion should not be given great weight.

Dr. Thrasher's opinion is not inconsistent with other evidence on the record. Other physicians, even specialists, repeatedly advised plaintiff to continue with "conservative treatment." He was repeatedly told either not to work, or to restrict his work. Oftentimes, after he returned to work, he re-injured his back.[9] Specialists agreed that plaintiff experienced back pain and ordered treatment.

Plaintiff's own subjective complaints are consistent with Dr. Thrasher's opinion. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). "The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Id. at 1322. Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dosage, and functional restrictions. Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003); Polaski, 739 F.2d at 1322. The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh, 222 F.3d at 452. "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Id.

Plaintiff had a strong work history, even trying to work while injured and requesting a release from work, up until he felt he was no

---

[9]Further, although after the hearing and decision, a physician noted that a third surgery would be possible. On December 10, 2004, plaintiff visited Dr. Fisher for back pain. (Tr. 428-30.) He was to continue conservative treatment including injections, and was told additional surgery might be necessary. (Tr. 428-30.)

-7-

longer able to do so.  (Tr. 247, 273.)  He consistently took strong pain medication for his back pain, including injections and prescription pain medication.  No doctor opined that he was exaggerating his symptoms.  His daily activities were not so strenuous as to take away from his credibility.

While certain opinions of physicians were similar to that of the ALJ's RFC assessment, these physicians were consulting physicians who saw plaintiff once.[10]  <u>Singh</u>, 222 F.3d at 452.  Further, even Dr. Runde opined plaintiff could never balance, crouch or stoop.  This too is inconsistent with the ALJ's finding that plaintiff can occasionally perform these activities.

For the above reasons, the decision of the ALJ should be reversed.  The action should be remanded for reconsideration in accordance with this opinion.

## **RECOMMENDATION**

For the reasons set forth above, it is the recommendation of the undersigned United States Magistrate Judge that the decision of the Commissioner of Social Security be reversed under Sentence 4 of 42 U.S.C. § 405(g) and remanded to the Commissioner of Social Security for reconsideration giving full credit to Dr. Thrasher's medical opinions.

---

[10] On October 7, 2002, a state medical consultant, Ruth Martin, opined that plaintiff had the RFC to occasionally lift 20 pounds, and could lift 10 pounds frequently.  Plaintiff could stand or walk for six hours in and eight-hour workday, and could sit for six hours.  Plaintiff was unlimited in his ability to push or pull, and could occasionally climb, stoop, kneel, crouch, crawl, and could frequently balance, but was to avoid concentrated exposure to vibrations.  (Tr. 212-18.)

On July 21, 2004, Eddie W. Runde, M.D., examined plaintiff and completed a medical source statement.  Dr. Runde opined that plaintiff had the RFC to lift 25 pounds occasionally and 10 pounds frequently.  Plaintiff could stand or walk for two hours in an eight-hour workday, and could sit periodically to relieve pain or discomfort.  He had an unlimited ability to push or pull, could occasionally climb, kneel, and crawl, and could never balance, crouch, or stoop.  Plaintiff could occasionally feel numbness in his lower extremities and should avoid vibrations and hazards.  (Tr. 373-76.)

The parties are advised they have ten days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.


　　　　　　　　　　　　　　　　　　　　　　　/S/ David D. Noce
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


Signed on August 7, 2007.